1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9
10

| | |
|---|---|
| RICHARD CONELY, | CASE NO. 3:11-cv-6064 |
| Plaintiff, | ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | |
| CITY OF LAKEWOOD, a municipal corporation, JAMES SYLER, in his official and individual capacity and JANE DOE SYLER and their marital community, | |
| Defendants. | |

11
12
13
14
15
16
17
18
19

This matter comes before the Court on Defendants' Motion for Summary Judgment (Dkt.

20

20).  The Court has considered the pleadings filed in support of and in opposition to the motion

and the file herein.

21
22

FACTS

The incident that is the subject of the complaint occurred on September 26, 2009, when

23
24

1    Plaintiff was injured by police dog Astor, who was under the control of Officer James Syler

2    ("Syler").

3              On September 26, 2009, at about 9:30 PM, Lakewood Police officers went to a house

4    where Plaintiff Richard Conely was located.  Dkt. 21, at 5.  Plaintiff was wanted on a no-bail

5    felony warrant for failure to report to his Department of Corrections supervisor.  Dkts. 22, at 4;

6    24, at 1.  The felony warrant read:

7              You are hereby commanded to forthwith arrest the said RICHARD MILTON
             CONLEY, for the crime(s) of UNLAWFUL POSSESSION OF A
8            CONTROLLED SUBSTANCE; DRIVING WHILE IN SUSPENDED OR
             REVOKED STATUS IN THIRD DEGREE; UNLAWFUL USE OF DRUG
9            PARAPHERNALIA, said defendant having escaped from confinement/BTC as
             ordered by the court and bring said defendant into court to be dealt with according
10           to law.

11   Dkt. 22, at 4.

12             An Incident Report written by Officer Jason Cannon, who was called to the scene of the

13   arrest, states:

14             LESA dispatch received information that Richard M. Conley 3-29-70 was at the
             residence and had several outstanding warrants for his arrest to include a DOC
15           Felony Escape Warrant. The R/P also report that the suspect will run and is
             often armed with knives.
16

17   Dkt. 22, at 8.

18             Upon the officers' arrival at the residence, Syler stated in his declaration that Plaintiff

19   fled out the back door only to see the officers guarding the back door, and ran back into the

20   house.  Dkt. 21, at 5.  Syler described the encounter as follows:

21             When we arrived at the residence I took K-9 Astor to the rear of the residence to
             watch the back while officers attempted contact at the front door. As officers
22           made contact at the front door, I saw the suspect running through the back yard
             away from the residence. I identified myself as a Police Officer and ordered the
23           suspect to stop or I would release my dog. The suspect stopped, looked at me and
             then turned and ran back towards the residence. I was able to identify the male as
24

ORDER ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT- 2

1      the warrant suspect from the previously viewed photograph. I released K-9 Astor and gave him the command to apprehend the fleeing suspect. K-9 Astor gave

2      chase after the suspect but the suspect was able to enter the residence through a basement door and lock the door behind him before K-9 Astor to catch up [sic] to

3      him.

4   *Id.*

5      Plaintiff, however, described, in his declaration, the initial contact with the officers as

6   follows:

7      [My friend and owner of the residence] has security cameras outside his house that are connected to his computer monitor. After dark that evening [my friend]

8      noticed someone walking in near his driveway and front yard and asked that I check to see who was there. I left out the back door and walked towards the

9      corner of the house until I could see toward the driveway. I saw several dark figures run in my direction. I was scared and I retreated back into the house. I then

10      heard someone bang on the back door and say "open this is the police." I had a warrant for my arrest for missing an appointment with my probation officer. I did

11      not want to be arrested.

12   Dkt. 24, at 1.

13      Syler stated that the last remaining occupant of the residence walked outside leaving

14   Plaintiff alone in the structure.  Dkt. 21, at 5.  The police report continued:

15      There were several places inside the residence for the suspect to hide and lay in wait for us. The suspect had not been searched for weapons and it was still

16      unknown if he was armed. It was unknown if there were any firearms or other weapons inside the residence. The suspect did have access to several household

17      items that could be used as a weapon. Due to the danger this posed to searching officers, I decided to use K-9 Astor to assist in locating the suspect.

18   *Id.*

19      Syler stated that he gave Plaintiff a warning and then sent the dog inside to search the

20   basement:

21

22      I gave a loud verbal warning at the open basement door for the suspect to come out or I would send in my dog, warning him that the dog would find and bite him. After getting no response from inside, I deployed K-9 Astor into the residence and

23      gave him the command to locale [sic] the suspect. K-9 Astor entered through the basement door and began searching the residence.

24

ORDER ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT- 3

1  *Id.*

2  

3        Officer Syler stated that the dog did not locate Plaintiff in the basement; the dog then

proceeded to the second level, where officers discovered a closed and locked door:

4  

5  > After clearing the basement, K-9 Astor made his way to the 2nd floor and
> indicated on a closed door in the upstairs hallway. I checked the door and found
> that it was locked. Officers contacted the homeowner at the front of the residence
> and advised that he did not know why the door was locked and had no way to
> unlock it. Based on K-9 Astor's indication on the door, I believed that the suspect
> was inside the room.

6  

7  

8  *Id.*

9        In the arrest report, Officer Cannon described the events as follows:

10 > K9 Astor searched the top floor and indicated on a locked bedroom near the front
> door. According to [the resident] that door should not have been locked. Ofc.
> Syler again gave several warnings that the room was going to be searched by a
> K9. We received no response and the door was forced. K9 Astor entered to search
> the room and made contact with Conley. Conley was taken into custody.

11 

12 

13 Dkt. 22, at 9.

14       Syler stated that he knocked on the door and gave another loud verbal warning "for the

15 suspect to come out or I would send in my dog and he would bite him."   Dkt. 21, at 5.  There

16 was no response from inside the room. *Id.*

17       Syler forced open the door and deployed K-9 Astor into the room.

18 > K-9 Astor located the suspect hiding inside this room. The suspect was actively
> hiding, lying on the floor with all the lights off inside the room. The suspect made
> no attempt to give up or announce his location prior to being located by K-9
> Astor. K-9 Astor contacted the suspect on the left shoulder and began trying to
> pull him out from hiding. I ordered the suspect to show me his hands, to make
> sure he was not holding a weapon. As soon as I could see the suspect's hands, I
> immediately recalled K-9 Astor. The suspect was then taken into custody at this
> location by other officers.

19 

20 

21 

22 *Id.* at 6.

23 

24 

ORDER ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT- 4

1    Plaintiff, however, described what happened after he hid in the top floor room, as

2  follows:

3       I hid in a small room used as a home office. . . . It contained a small table with a
        computer and a dog crate. There was no bed in the room. . . . I heard an officer

4       knock on the door and shout for me to come out or he would send the dog in. I
        was scared for my life and did not know what would happen if I open [sic] the

5       door. Instead I decided to give up by lying face down on the floor. I lied [sic] face
        down,  with my arms and legs spread. My feet were directly in from of the door.

6       The officer opened the door. I had to lift my feet up so the door had room to open.
        Once the officer opened the door all the way, I placed my feet down on the floor,

7       in the door way between the hall and the room. The light from the hall lit the
        room. The dog came in the room and began sniffing my feet, then my legs, then

8       my torso. The dog slowing walk [sic] around me, sniffing and worked his way up
        towards my head. I could feel the dog's breath on my face. I did not move. I did

9       not say a word. About 10-15 seconds after the dog enter [sic] the room, he bit me.
        He tore into my upper arm with extreme force and violence. He pulled and ripped

10      at my arm for several seconds before the officer called him off.

11  Dkt. 24, at 2. The Court will hereafter refer to this statement as "Plaintiff's testimony."

12    Syler stated that, once Plaintiff had been taken into custody, medical aid was called to the

13  scene to treat his injuries.  Dkt. 21, at 6.  Plaintiff stated that he was not placed under arrest or

14  read his Miranda rights. Dkt. 24, at 2.  Syler stated that Plaintiff was treated at the scene by

15  Lakewood Fire for the K-9 bite (Dkt. 21, at 6), and was then transported to Tacoma General

16  Hospital where Plaintiff had three surgeries to repair his arm. Dkt. 24, at 2.

17                          <u>PROCEDURAL HISTORY</u>

18  **A. Complaint**

19    On December 5, 2011, Plaintiff filed a civil complaint against the City of Lakewood,

20  James Syler and Jane Doe Syler, contending (1) that Syler, acting as an agent of the City of

21  Lakewood ("City"), committed acts that constitute assault and battery; (2) that Syler and the City

22  violated his constitutional rights under the Fourth and Fourteenth Amendments to the United

23  States Constitution; (3) that Syler was negligent when he failed to exercise control of police dog

24

ORDER ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT- 5

Astor during the encounter with Plaintiff; and that the City, as employer of Syler, who was acting within the scope of his employment, is liable for the negligence of Syler and Astor, under the theory of *respondeat superior*; (4) that Syler negligently used excessive force to arrest Plaintiff; and that the City, as employer of Syler, who was acting within the scope of his employment, is liable for the negligence of Syler and Astor, under the theory of respondeat superior; (5) that Syler's negligence and excessive force caused Plaintiff to suffer emotional distress; and that the City, as employer of Syler, who was acting within the scope of his employment, is liable for the negligence of Syler and Astor, under the theory of *respondeat superior*; and (6) that Defendants are strictly liable, pursuant to RCW 16.08.040, for the injuries inflicted by Astor.  Dkt. 1-3, at 5-24.

On December 28, 2011, Defendants removed the case to federal court on the basis of federal question jurisdiction under 28 U.S.C. § 1331.  Dkt. 1.

On February 6, 2010, Defendants filed an answer.  Dkt. 6.  Defendants entered a general denial, but in their answer admit that Syler was acting within the scope of his employment.  Dkt. 6, at 2.

**B. Motion for Judgment on the Pleadings**

On April 4, 2012, the City (not Syler) filed a Motion for Judgment on the Pleadings.  Dkt. 12.  On May 8, 2012, the Court granted in part and denied in part the claims against the City. Dkt. 17.  The Court dismissed with prejudice the federal civil rights claims against the City and the direct liability state law claims against the City for assault and battery, negligence, negligent use of excessive force, intentional infliction of emotional distress, and negligent infliction of emotional distress. Dkt. 17, at 11. The court identified the remaining claims against the City, as follows:  strict liability against the City pursuant to RCW 16.08.040; and vicarious liability

1   claims against the City through a theory of *respondeat superior*.  Dkt. 17.  The Court also stated

2   that "Plaintiff in his original complaint does not appear to make claims for liability of the City of

3   Lakewood for the dog Astor," but "[b]ecause the City, as the moving party, does not appear to

4   discuss these claims, any claims related to liability for the actions for the dog Astor are not

5   before the court on the motion for judgment on the pleadings."  Dkt. 17, at 9-10.

6          **C. Motion to File Amended Complaint**

7          On April 30, 2012, Plaintiff filed a Motion to File Amended Complaint.  Dkt. 14. The

8   proposed amended complaint eliminated the federal constitutional claim against the City (the

9   court dismissed this claim in its May 8, 2012 order).  Dkt. 14, at 2.  On May 22, 2012, the Court

10  denied the motion to file an amended complaint.  Dkt. 19.  Specifically, the Court stated that the

11  amended state law claims did not clearly state "whether plaintiff is alleging liability on the basis

12  of *respondeat superior* for Officer Syler's actions in controlling and handling Astor; whether

13  plaintiff is alleging direct causes of action against the City of Lakewood, based upon Officer

14  Syler's conduct (these direct causes of action were dismissed by the court's May 8, 2010 order);

15  and/or whether plaintiff is alleging that the City of Lakewood has direct liability for Astor's

16  conduct, independent of Officer Syler."  Dkt. 19, at 4. The Court denied Plaintiff's Motion

17  without prejudice, stating that Plaintiff should clarify his allegations if he wished to proceed with

18  claims other than those in the original complaint.  *Id.*  Plaintiff did not file another motion to

19  amend the complaint.

20         Neither the motion for judgment on the pleadings nor the motion to file an amended

21  complaint affected the federal constitutional claims or the state law claims against Syler.  Those

22  claims remain a part of this case.

23         **D. Motion for Summary Judgment**

24

1       On November 8, 2012, Defendants filed this Motion for Summary Judgment, requesting

2 that all the remaining claims be dismissed. Dkt. 20.  Defendants argue that (1) the City is not

3 strictly liable for the actions of the police dog under RCW § 16.08.040 because Syler's use of the

4 dog was lawful and Plaintiff provoked the dog by not obeying orders; (2) the City is not

5 vicariously liable for the state law claims, on a *respondeat superior* theory, because Syler is not

6 liable; (3) Syler is not strictly liable for the dog bite because he is not the owner of the dog; (2)

7 Syler did not violate Plaintiff's Fourth or Fourteenth Amendment rights because he acted

8 reasonably in using the police dog; (3) Syler is entitled to qualified immunity because he acted

9 reasonably and was not on notice that any possible unreasonable action was unlawful; (4) Syler

10 did not owe Plaintiff a duty of care, and therefore, was not negligent; (5) negligent use of

11 excessive force is not a tort; and (6) Syler did not act outrageously by using a police dog to

12 apprehend a fleeing felon. *Id.*

13       In response, Plaintiff argues that there are issues of material fact regarding the

14 reasonableness of Syler's use of the dog. Specifically, Plaintiff argues that (1) the City is strictly

15 liable under RCW § 16.08.040 because Syler's use of force was unreasonable given that Plaintiff

16 posed no danger or ability to flee once lying down on floor in the locked room; (2) Syler violated

17 Plaintiff's Fourth Amendment right because Syler's actions in using the dog were unreasonable;

18 (3) Syler is not entitled to qualified immunity because he acted unreasonably and the law

19 concerning use of police dogs is clearly established; (4) negligent use of excessive force is a

20 cause of action in these unique circumstances given that the injury was caused by a dog owned

21 by one defendant and controlled by another, and therefore the City was negligent in its training

22 of the dog; (5) the City and Syler were negligent in their training and use of the dog; (6) Syler is

23 liable for outrage because he allowed the dog to bite Plaintiff while Plaintiff was lying on the

24

1   floor consenting to arrest; (7) the Court did not dismiss the direct liability state law claims

2   against the City deriving from the City's ownership and training of the dog in the Court's earlier

3   rulings and Defendants did not argue these claims in the present Motion; and (8) Defendants did

4   not address the assault and battery claim against Syler in its Motion. Dkt. 23.

5        In reply, Defendants first argue that the Declaration (Dkt. 25) of Plaintiff's expert, Ernest

6   Burwell, should not be considered because Plaintiff did not timely disclose this expert, and both

7   the expert opinion disclosure deadline and discovery deadline has passed.  Dkt. 26.  Defendants

8   also argue (1) that the disputed facts that Plaintiff has presented are not material facts; (2) that it

9   was reasonable to use a dog to search the room where Plaintiff was located; (3) that the strict

10  liability claim under RCW § 16.08.040 should be dismissed because Syler's actions were

11  reasonable and because Plaintiff provoked the dog bite by disobeying orders; (4) that Syler is

12  entitled to qualified immunity because he acted reasonably and the law was not clearly

13  established; (5) that Plaintiff does not cite any case law showing that negligent use of excessive

14  force is a cause of action; (6) that general police activities are not reachable in negligence; (7)

15  that Plaintiff failed to provide comparative examples showing outrageous conduct; and (8) direct

16  liability claims against the City stemming from the use of Astor and the assault and battery

17  claims are "red herrings." Dkt. 26.

18                              SUMMARY JUDGMENT STANDARD

19       Summary judgment is proper only if the pleadings, the discovery and disclosure materials

20  on file, and any affidavits show that there is no genuine issue as to any material fact and that the

21  movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c). The moving party is

22  entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

23  showing on an essential element of a claim in the case on which the nonmoving party has the

24

burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue

of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find

for the non moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

(1986)(nonmoving party must present specific, significant probative evidence, not simply "some

metaphysical doubt.").  *See also* Fed.R.Civ.P. 56(e).  Conversely, a genuine dispute over a

material fact exists if there is sufficient evidence supporting the claimed factual dispute,

requiring a judge or jury to resolve the differing versions of the truth.  *Anderson v. Liberty*

*Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors*

*Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question.  The court

must consider the substantive evidentiary burden that the nonmoving party must meet at trial –

e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254, T.W. *Elect.*

*Service Inc.*, 809 F.2d at 630.  The court must resolve any factual issues of controversy in favor

of the nonmoving party only when the facts specifically attested by that party contradict facts

specifically attested by the moving party.  The nonmoving party may not merely state that it will

discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial

to support the claim.  *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*).

Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not

be "presumed."  *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

<u>DISCUSSION</u>

**A. Declaration of Expert Witness Ernest Burwell**

Defendants argue that, because Plaintiff's expert witness, Ernest Burwell, was not

disclosed to Defendants before the expert witness disclosure deadline of August 15, 2012 (Dkt.

10), nor before the discovery cutoff deadline of October 15, 2012 (Dkt. 10), Mr. Burwell's report

(Dkt. 25) containing his expert opinion on the use of police force should be excluded.

Federal Rule of Civil Procedure 37(c)(1) states

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use the information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or harmless.

Defendants provide argument, but no evidence, showing that Plaintiff has not properly

disclosed this expert.  Therefore, the Court should not grant this motion to exclude the testimony

of Mr. Burwell based on Plaintiff's alleged failure to adhere to deadlines.  Defendants' motion to

exclude Mr. Burwell's testimony on the basis that it was not properly disclosed is denied without

prejudice. Whether Mr. Burwell may testify at trial, and to what he may testify, may be

determined by motion *in limine* or other motion, at a later time.

That does not end the inquiry, however. In reviewing Mr. Burwell's proposed expert

opinion/evidence, the Court should determine if Mr. Burwell's opinion can be properly

considered under the *Daubert* standard. In deciding whether to admit scientific testimony or

evidence, the trial judge must ensure that any and all scientific testimony or evidence admitted is

relevant and reliable.  *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993).

Scientific evidence is reliable if it is based on an assertion that is grounded in methods of

science—the focus is on principles and methodology, not conclusions. *Id.* at 595-96.  In *Daubert*,

the Supreme Court listed four non-exclusive factors for consideration in the reliability analysis:

(1) whether the scientific theory or technique can be and has been tested; (2) whether the theory

or technique has been subjected to peer review and publication; (3) whether a particular

technique has a known potential rate of error; and (4) whether the theory or technique is

generally accepted in the relevant scientific community. *Id.* at 593-94.

1          In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-48 (1999), the Supreme Court

2    extended *Daubert*'s standard of evidentiary reliability to all experts, not just scientific ones. That

3    standard requires a valid connection to the pertinent inquiry as a precondition to admissibility.

4    *Id*.  Where such testimony's factual basis, data, principles, methods, or their application are

5    called sufficiently into question, the trial judge must determine whether the testimony has a

6    reliable basis in the knowledge and experience of the relevant discipline. *Id.*

7          Plaintiff retained the services of Mr. Burwell, who stated in his report that he is a "Police

8    Practices Expert."  Dkt. 25.  Mr. Burwell concluded in general that: "It is my opinion that

9    excessive, unreasonable, and unnecessary force was used to affect the arrest of Mr. Conley."

10   Dkt. 25, at 3.

11         Mr. Burwell's opinion does not meet the standard of evidentiary reliability in this case.

12   The theory or technique he used to reach his conclusion is unclear, and there is no showing that it

13   has been, or can be, tested.  There is no showing that the theory or technique has been subjected

14   to peer review or publication, or whether it has a rate of error.  There is no showing that the

15   theory or technique is generally accepted in the law enforcement community.  In light of *Daubert*

16   and *Kumho Tire*, it is simply not sufficient for a qualified expert to render an opinion based on an

17   *ipse dixit* analysis. Mr. Burwell's opinion appears to be legal argument rather than expert

18   analysis.  It is not helpful to the court on this matter, and certainly, by itself, does not raise issues

19   of fact.

20         For these reasons, the Court will not consider the testimony of Mr. Burwell for the

21   purposes of this Order.

22   **B. Contested Claims**

23

24

1      The parties dispute which claims are being contested on summary judgment. Defendants

2 contend that they are contesting all remaining claims. Plaintiffs argue that the Court did not

3 dismiss the state law claims against the City for the actions of Astor, independent of Syler.

4 Plaintiffs also argue that Defendants did not address the assault and battery claim against Syler,

5 and therefore the Court should not address this claim on summary judgment.

6      In the Court's Order on Plaintiff's Motion to File Amended Complaint, the Court

7 dismissed all claims against the City based on direct liability for the actions of Astor, except the

8 strict liability claim under RCW § 16.08.040. The Court specifically noted that Plaintiff did not

9 appear to make claims for liability on the part of the City for the dog Astor, and later informed

10 Plaintiff that if he wished to allege such claims, he should allege the basis for those claims.

11 Plaintiff was clearly on notice what he needed to do to plead any state law claims against the

12 City for the actions of Astor, independent of Syler.

13      Therefore, the claims remaining against Syler are (1) violation of Plaintiff's Fourteenth

14 Amendment right to be free of excessive force; (2) violation of Plaintiff's Fourth Amendment

15 right to be free of excessive force; (3) negligence; (4) negligent use of excessive force; (5)

16 negligent infliction of emotional distress; (6) intentional infliction of emotional distress; (7)

17 assault and battery; and (8) strict liability under RCW § 16.08.040. The claims remaining against

18 the City are (1) vicarious liability under *respondeat superior* for the five state law claims listed

19 above against Syler, and (2) strict liability under RCW § 16.08.040.

20 **C. Claims against Syler**

21      1. *Excessive Force under the Fourteenth Amendment*

22      In its Motion, Defendants make passing reference to Plaintiff's unspecified

23 Fourteenth Amendment claim. Dkt. 20, at 13. Defendants state that the standard for a

24

ORDER ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT- 13

1   Fourteenth Amendment excessive force claim is higher than that under the Fourth

2   Amendment, but decline to further address this statement in their briefing. Plaintiff does

3   not address the Fourteenth Amendment claim in his briefing.

4   　　　　As best the Court can tell, Plaintiff argues that Defendants violated his due

5   process rights under the Fourteenth Amendment. The Supreme Court in *Graham v.*

6   *Connor*, 490 U.S. 386, 393-94 (1989) addressed the propriety of alleging excessive force

7   claims under the Fourteenth Amendment, ruling that these claims should be brought

8   under the Fourth or Eighth Amendments and not under general due process standards of

9   the Fourteenth Amendment. An excessive force claim under the Fourteenth Amendment

10   is not cognizable.

11   　　　　Therefore, the Court should grant summary judgment as to the excessive force

12   claim under the Fourteenth Amendment, and dismiss the claim.

13   　　　　2. *Excessive Force under the Fourth Amendment*

14   　　　　Plaintiff alleges that Syler used excessive force when Syler failed to stop Astor from

15   biting Plaintiff. Defendants argue that Syler's use of Astor to locate and apprehend Plaintiff was

16   reasonable. Although the parties do not specifically argue separate instances of excessive force,

17   it appears that there are two series of events that give rise to potential excessive force claims. The

18   first series of events started when Syler used Astor to locate Plaintiff and ended when Astor

19   entered the room where Plaintiff was hiding. The second series of events began when Astor

20   entered the room and ended when Astor stopped biting Plaintiff. The Court will examine both

21   uses of force in determining Syler's liability.

22   　　　　　　a. Qualified Immunity

23

24

1    Defendants argue that Syler is entitled to qualified immunity because his use of Astor

2    was reasonable given that Plaintiff was an escaped felon, had a propensity to carry knives,

3    evaded arrest, and hid in a dark room after repeated orders to show himself. Defendants also

4    argue that, even if Syler violated Plaintiff's rights, Syler was reasonably mistaken because the

5    law was not clearly established. Plaintiff argues that Syler is not entitled to qualified immunity

6    because Syler's use of Astor was unreasonable under Plaintiff's testimony. Plaintiff also argues

7    that the law regarding use of force with police dogs was clearly established at the time of the

8    incident.

9    Defendants in a Section 1983 action are entitled to qualified immunity from damages for

10   civil liability if their conduct does not violate clearly established statutory or constitutional rights

11   of which a reasonable person would have known. *Pearson v. Callahan*, 129 S. Ct. 808, 815

12   (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The existence of qualified

13   immunity generally turns on the objective reasonableness of the actions, without regard to the

14   knowledge or subjective intent of the particular official. *Id*. at 819.

15   In analyzing an assertion of qualified immunity, the Court must determine: (1) whether a

16   constitutional right would have been violated on the facts alleged, taken in the light most

17   favorable to the party asserting the injury; and (2) whether the right was clearly established when

18   viewed in the specific context of the case. *Saucier v. Katz*, 121 S. Ct. 2151, 2156 (2001).  While

19   the sequence set forth in *Saucier* is often appropriate, it should no longer be regarded as

20   mandatory. *Pearson*, 129 S. Ct. at 811.

21                    i. Alleged Violation of Plaintiff's Fourth Amendment Right when Syler

22                    Used Astor to Locate Plaintiff

23

24

ORDER ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT- 15

1     The first question is whether a constitutional right would have been violated on the facts

2 alleged, taken in the light most favorable to plaintiff. *Saucier v. Katz*, 121 S. Ct. 2151, 2156

3 (2001). The use of force implicates the Fourth Amendment protections that guarantee citizens the

4 right to be secure in their persons against unreasonable seizures of the person. *Tennessee v.*

5 *Garner*, 471 U.S. 1 (1985). The reasonableness of the force used to effect a particular seizure is

6 determined by carefully balancing the nature and quality of the intrusion on the individual's

7 Fourth Amendment interests against the countervailing governmental interests at stake. *Graham*

8 *v. Connor*, 490 U.S. 386, 396 (1989). The force applied must be balanced against the need for

9 that force. *Liston v. County of Riverside*, 120 F.3d 965, 976 (9th Cir. 1997).

10     In determining the reasonableness of officers' actions, the court (1) assesses the severity

11 of the intrusion on the individual's Fourth Amendment rights by considering the type and

12 amount of force inflicted; (2) analyzes the government's interests by considering the severity of

13 the crime, whether the suspect posed an immediate threat to the officers' or public's safety, and

14 whether the  suspect was resisting arrest or attempting to escape; and (3) balances the gravity of

15 the intrusion on the individual against the government's need for that intrusion. *Espinosa v. City*

16 *and County of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010). Other factors that may be

17 considered are: whether the officers gave a warning to the injured party, and whether there were

18 alternative methods of capturing or subduing a suspect. *Smith v. City of Hemet*, 394 F.3d 689,

19 701 (9th Cir. 2005); *Deorle v. Rutherford*, 272 F.3d 1272, 1283-84 (9th Cir. 2001). The totality

20 of the circumstances of each case must be considered. *Fikes v. Cleghorn*, 47 F.3d 1011, 1014

21 (9th Cir. 1995).

22     The reasonableness of a particular use of force must be judged from the perspective of a

23 reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Graham*, 490 U.S.

24

ORDER ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT- 16

1   at 396. In addition, "[t]he calculus of reasonableness must embody allowance for the fact that

2   police officers are often forced to make split-second judgments—in circumstances that are tense,

3   uncertain, and rapidly evolving—about the amount of force that is necessary in a particular

4   situation." *Id.* at 396-97. The question is whether the officers' actions are objectively reasonable

5   in light of the facts and circumstances confronting them. *Id.* at 397.

6          In the first series of events, ending once Astor entered the room, the parties do not dispute

7   the material facts. Taking the facts in the light most favorable to the injured party, the severity of

8   intrusion and amount of force inflicted during the first series of events was insubstantial, and the

9   government had a strong interest in using Astor to locate Plaintiff because he was fleeing from

10  arrest. The evidence submitted clearly shows that Syler acted reasonably when he used Astor to

11  locate Plaintiff, and did not violate Plaintiff's Fourth Amendment right in doing so.

12         The Court need not address whether the law regarding the use of Astor to locate Plaintiff

13  was clearly established, because, on the facts alleged, Syler did not violate Plaintiff's Fourth

14  Amendment rights in the first series of events.  Therefore, the Court should grant qualified

15  immunity for Syler when he used Astor to locate Plaintiff, and dismiss this portion of the

16  excessive force claim.

17                          ii. Alleged Violation of Plaintiff's Fourth Amendment Right when Astor

18                              Bit Plaintiff

19         In the second series of events, beginning when Astor entered the room, the parties dispute

20  the facts. If the facts are as Plaintiff contends in Plaintiff's testimony, and applying the *Espinosa*

21  *v. City and County of San Francisco* and *Smith v. City of Hemet* factors, a reasonable fact finder

22  could find that Syler's use of Astor to bite Plaintiff was excessive force.

23

24

1    For these reasons, the Court should find, for purposes of this Order only, that Syler's use

2    of Astor after Astor entered the room, based on Plaintiff's testimony, violated Plaintiff's Fourth

3    Amendment right to be free of excessive force.

4                                iii. Clearly Established law

5    "The relevant dispositive inquiry in determining whether a right is clearly established is

6    whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he

7    confronted." *Saucier v. Katz*, 121 S. Ct. 2151, 2156 (2001). "This does not mean that any

8    official action is protected by qualified immunity unless the very action in question has

9    previously been held unlawful, but it does require that in the light of pre-existing law the

10   unlawfulness must be apparent. [Therefore], when the defendant's conduct is so patently

11   violative of the constitutional right that reasonable officials would know without guidance from

12   the courts that the action was unconstitutional, closely analogous pre-existing case law is not

13   required to show that the law is clearly established." *Mendoza v. Block*, 27 F.3d 1357, 1361 (9th

14   Cir. 1994) (internal citations and quotations omitted). The Ninth Circuit has analogized the use

15   of police dogs to the use of other police weapons.

16       The reasonableness of force is analyzed in light of such factors as the
     requirements for the officer's safety, the motivation for the arrest, and the extent

17   of the injury inflicted.  This analysis applies to any arrest situation where force is
     used, whether it involves physical restraint, use of a baton, use of a gun, or use of

18   a dog. We do not believe that a more particularized expression of the law is
     necessary for law enforcement officials using police dogs to understand that under

19   some circumstances the use of such a "weapon" might become unlawful. For
     example, no particularized case law is necessary for a deputy to know that

20   excessive force has been used when a deputy sics a canine on a handcuffed
     arrestee who has fully surrendered and is completely under control. An officer is

21   not entitled to qualified immunity on the grounds that the law is not clearly
     established every time a novel method is used to inflict injury. . . . We therefore

22   hold that the deputies' use of the police dog is subject to excessive force analysis,
     and that this law is clearly established for purposes of determining whether the

23   officers have qualified immunity.

24

1    *Mendoza v. Block*, 27 F.3d 1357, 1362 (9th Cir. 1994).

2        In reference to the *Mendoza* rule, the court in *Watkins v. City of Oakland, Cal.*,

3 145 F.3d 1087, 1093 (9th Cir. 1998) held that "it was clearly established that excessive

4 duration of the [dog] bite and improper encouragement of a continuation of the attack by

5 officers could constitute excessive force that would be a constitutional violation."

6        Here, although the parties do not address this specific argument, the use of a

7 police dog to apprehend a suspect is not meaningfully indistinguishable from any other

8 method used to apprehend a suspect, such as by physical force, a baton, pepper spray, or

9 a taser. The law is clear in stating that officers are not to use weapons when suspects are

10 consenting to arrest. *Davis v. City of Las Vegas*, 478 F.3d 1048, 1052 (9th Cir. 2007).

11        Even when suspects do not initially consent to arrest, the law is clear regarding

12 excessive force. *See, e.g.*, *Chew*, 27 F.3d at 1436, 1443 (holding that, under *Graham*, the

13 fact that the defendant officer used "severe force" to arrest a suspect who did not pose an

14 immediate threat to the safety of police officers was sufficient to preclude summary

15 judgment for the officer, notwithstanding the fact that the suspect had attempted to flee

16 and was the subject of three outstanding felony warrants).

17        Based upon Plaintiff's testimony, Syler's use of Astor after Astor entered the

18 room could be considered so patently violative of the Fourth Amendment that reasonable

19 officials would know that the action was unconstitutional. The law regarding use of

20 police dogs and dog bites is clearly established.

21        b. Conclusion

22        At this point, Syler is not entitled to qualified immunity for his use of Astor after

23 Astor entered the room. The Court should deny summary judgment on the Fourth

24

ORDER ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT- 19

1   Amendment claim to that extent. Because the Court construed the disputed facts in favor

2   of Plaintiff, this Order should not preclude Defendants, as the factual record develops,

3   from raising qualified immunity at trial.

4        3. *Negligence*

5        The state law negligence claims are against Syler, and, on the basis of *respondeat*

6   *superior*, against the City. Based on Plaintiff's testimony, there are issues of material fact on

7   duty, breach, and causation. The public duty doctrine gives no relief to Defendants because any

8   duty breached was owed to Plaintiff, not to the general public. *Garnett v. City of Bellevue*, 59

9   Wash. App. 281 (1990).

10       The Court should deny summary judgment as to the state law negligence claim against

11  Syler.

12       4. *Negligent Use of Excessive Force*

13       The negligent use of excessive force claim is not a separate claim, but is an issue within

14  the general negligence claim. Therefore, the Court should not grant summary judgment as to the

15  negligent use of excessive force claim against Syler, but will not treat this claim as a separate

16  claim.

17       5. *Negligent Infliction of Emotional Distress*

18       Although Defendants state in this Motion that they request summary judgment on all

19  claims, neither party specifically addresses the negligent infliction of emotional distress claim.

20       Generally, a "plaintiff may recover for negligent infliction of emotional distress if she

21  proves negligence, that is, duty, breach of the standard of care, proximate cause, and damage,

22  and proves the additional requirement of objective symptomatology." *Strong v. Terrell*, 147

23  Wash. App. 376, 387, 195 P.3d 977 (2008).

24

ORDER ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT- 20

1   This claim, also, is not truly a separate claim, but is a statement of a type of damage

2   Plaintiff claims he suffered. Therefore, the Court should not grant summary judgment as to the

3   negligent infliction of emotional distress claim against Syler, but will not treat this claim as a

4   separate claim.

5       6. *Intentional Infliction of Emotional Distress*

6       This is a so-called "outrage" claim. "To establish a tort of outrage claim, a plaintiff must

7   show (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional

8   distress, and (3) severe emotional distress on the part of the plaintiff." *Reid v. Pierce County*, 136

9   Wash. 2d 195, 202, 961 P.2d 333 (1998). "Liability exists only where the conduct has been so

10  outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

11  decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."

12  *Grimsby v. Samson*, 85 Wash. 2d 52, 59, 530 P.2d 291 (1975).

13      Here, even under Plaintiff's testimony, Syler's use of Astor does not meet the high

14  threshold of conduct that is "so outrageous in character, and so extreme in degree, as to go

15  beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in

16  a civilized community." Washington courts have dismissed claims of outrage on much more

17  egregious conduct than that which is presented in this case. *See, e.g.*, *Babcock v. State By &*

18  *Through Dept. of Soc. & Health Services*, 112 Wash. 2d 83, 90, 768 P.2d 481 (1989)

19  *reconsidered on other grounds, Babcock v. State*, 116 Wash. 2d 596, 809 P.2d 143 (1991).

20      For this reason, the Court should grant summary judgment as to the intentional infliction

21  of emotional distress claim against Syler, and this claim should be dismissed.

22      7. *Assault and Battery*

23

24

1    Defendants argue that the assault and battery claim is a "red herring." Plaintiff does not

2    address this claim.

3    "A battery is a harmful or offensive contact with a person, resulting from an act intended

4    to cause the plaintiff or a third person to suffer such a contact, or apprehension that such a

5    contact is imminent. An assault is any act of such a nature that causes apprehension of a battery."

6    *McKinney v. City of Tukwila*, 103 Wash. App. 391, 408, 13 P.3d 631 (2000) (internal citations

7    and quotations omitted).  If a police officer's use of force was unreasonable, then that officer is

8    not entitled to qualified immunity and is liable for assault and battery. *Brooks v. City of Seattle*,

9    599 F.3d 1018, 1031 (9th Cir. 2010) *on reh'g en banc sub nom. Mattos v. Agarano*, 661 F.3d 433

10   (9th Cir. 2011); *Staats v. Brown*, 139 Wash. 2d 757, 780, 991 P.2d 615 (2000).

11   The Court should deny summary judgment as to the assault and battery claim against

12   Syler.

13   8. *Strict Liability under RCW § 16.08.040*

14   Plaintiff argues in his complaint that Syler is strictly liable for his use of Astor, but in his

15   Response Plaintiff does not address this claim. Defendants argue that RCW § 16.08.040 does not

16   apply to Syler because the City, not Syler, is the owner of Astor.

17   RCW § 16.08.040 (subsequently amended) stated, at the time of the arrest and when the

18   complaint was filed, that

19   The owner of any dog which shall bite any person while such person is in or on a
     public place or lawfully in or on a private place including the property of the
20   owner of such dog, shall be liable for such damages as may be suffered by the
     person bitten, regardless of the former viciousness of such dog or the owner's
21   knowledge of such viciousness.

22

23

24

1  Only the owner of a dog can be liable under RCW § 16.08.040. *See Saldana v. City of*

2  *Lakewood*, 11-CV-06066 RBL, 2012 WL 2568182 (W.D. Wash. July 2, 2012). Because Syler

3  does not own Astor, Syler cannot be liable under RCW § 16.08.040.

4      The Court should grant summary judgment as to the strict liability claim against Syler

5  under RCW § 16.08.040, and this claim should be dismissed.

6  **D. Claims against the City**

7      1. *State Law Claims under Respondeat Superior*

8      Under a *respondeat superior* theory, Plaintiff claims that the City is liable for assault and

9  battery, negligence, negligent use of excessive force, intentional infliction of emotional distress,

10  and negligent infliction of emotional distress.  Because Defendants have admitted that Syler was

11  acting within the scope of his employment, the City's liability as to these claims rise and fall on

12  Syler's liability as to these claims.

13      Accordingly, the Court should deny summary judgment as to the negligence, negligent

14  use of excessive force, negligent infliction of emotional distress, and assault and battery claims

15  against the City. The Court should grant summary judgment as to the intentional infliction of

16  emotional distress claim against the City.

17      2. *Strict Liability under RCW § 16.08.040*

18      Plaintiff argues that the City is strictly liable for Syler's unlawful use of Astor.

19  Defendants argue that Syler's use of Astor was reasonable and that Plaintiff provoked the use of

20  Astor.

21      Washington federal district courts have ruled on the liability of municipalities, as owners

22  of police dogs, under RCW § 16.08.040. If the officer's use of the dog is lawful, then the city is

23  not liable. *Saldana*, 2012 WL 2568182, at *4. The Ninth Circuit in *Miller v. Clark County* has

24

ORDER ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT- 23

1 | held that a police officer's use of a police dog is lawful if the officer's ordering the dog to bite

2 | was reasonable under the Fourth Amendment.  340 F.3d 959, 968 n.14 (9th Cir. 2003).

3 |   Further, RCW § 16.08.060 states that "[p]roof of provocation of the attack by the injured

4 | person shall be a complete defense to an action for damages." Here, Plaintiff, by fleeing and

5 | locking himself inside a room, provoked the use of Astor to find where Plaintiff was located. The

6 | facts, however, do not show that Plaintiff provoked the actual bite, given Plaintiff's testimony.

7 | There is no indication of provocation in these facts that would warrant a defense.

8 |   Therefore, the City's liability under RCW § 16.08.040 hinges on whether Syler's actions

9 | were reasonable under the Fourth Amendment. Accordingly, the Court should deny summary

10 | judgment as to the strict liability claim under RCW § 16.08.040 against the City.

11 |   Accordingly, it is hereby **ORDERED** that

12 |   Defendants' Motion to Strike the declaration of Plaintiff's expert witness Ernest Burwell

13 | as untimely disclosed (Dkt. 26) is **DENIED**, but the declaration was not considered because it

14 | did not meet evidentiary standards.

15 |   Defendants' Motion for Summary Judgment (Dkt. 20) is **GRANTED IN PART** and

16 | **DENIED IN PART**.

17 |   The Motion for Summary Judgment is **GRANTED** as to (1) the Fourteenth Amendment

18 | excessive force claim against Syler; (2) the Fourth Amendment excessive force claim against

19 | Syler as to Syler's use of Astor to locate Plaintiff; (3) the intentional infliction of emotional

20 | distress claims against the City and Syler; and (4) the strict liability claim under RCW §

21 | 16.08.040 against Syler. These claims are dismissed with prejudice.

22 |   The Motion for Summary Judgment is **DENIED** as to (1) the Fourth Amendment

23 | excessive force claim against Syler as to Syler's use of Astor once Astor entered the room; (2)

24 |

1  the negligence claims against the City and Syler; (3) the negligent use of excessive force claims

2  against the City and Syler; (4) the negligent infliction of emotional distress claims against the

3  City and Syler; (5) the assault and battery claims against the City and Syler; and (6) the strict

4  liability claim under RCW § 16.08.040 against the City.

5        The Clerk is directed to send uncertified copies of this Order to all counsel of record and

6  to any party appearing pro se at said party's last known address.

7        Dated this 11th day of December, 2012.

9        _____
          ROBERT J. BRYAN
10        United States District Judge

ORDER ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT- 25